UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cortec Corporation,

        Plaintiff,                                No. 14-cv-3261 (JNE/JSM)

v.                                                   ORDER

Transilwrap Company, Inc.,

        Defendant.

---

This is a trademark infringement action brought by Plaintiff Cortec Corporation against Defendant Transilwrap Company, Inc. The case is before the Court on Transilwrap's Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 10. For the reasons discussed below, the motion is granted.

**Background**

According to its Complaint, Cortec is a Minnesota corporation based in Saint Paul that "is in the business of producing, marketing, and selling vapor phase corrosion inhibitor plastic film . . . for use in connection with, for example, industrial or commercial wrapping." Cortec states that it has "affix[ed] the color blue as a trademark to its film" since 1981, and that it has a registered trademark for "the COLOR BLUE as used in connection with" the film. Cortec alleges that Transilwrap, an Illinois corporation with its principal place of business in Franklin Park, Illinois, recently "commenced selling competitive blue marked film products not originating with Cortec on the open market."

On those allegations, Cortec asserts five claims against Transilwrap: for violating the Lanham Act; for common law and statutory trademark infringement; and for unfair competition and deceptive trade practices, brought under Minnesota law.

## Discussion

Transilwrap has moved under Federal Rule of Civil Procedure 12(b)(2) to dismiss Cortec's Complaint for lack of personal jurisdiction. Cortec, as the plaintiff seeking to invoke the Court's power to hear the case, "bears the burden to show that jurisdiction exists"; that "burden does not shift to the party challenging jurisdiction." *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

To survive Transilwrap's motion, then, Cortec

> must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. . . . Although the evidentiary showing required at the prima facie stage is minimal, . . . the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion . . . . We must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing.

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks, brackets, and citations omitted).

The prima facie showing that Cortec is obliged to make here is that "the exercise of personal jurisdiction comports with due process."[1] *Fastpath*, 760 F.3d at 820 (quotation omitted).

---

[1] Cortec's Complaint cites three bases of subject matter jurisdiction: 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1338 (trademark).

In a diversity case, the personal jurisdiction analysis proceeds through "two levels, first examining whether the exercise of jurisdiction is proper under the forum state's long-arm statute. . . . If [it is], we then address whether the exercise of personal jurisdiction comports with due

>   Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. . . . Minimum contacts is based on the notion that those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter. . . . A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. . . . Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. . . .

*Id.* at 820-21 (citations omitted).

The Eighth Circuit "ha[s] established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state." *Id.* at 821. Those factors are: "1) the

---

process." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387-88 (8th Cir. 1991).

   This two-step analysis also applies in a federal question case where the statute under which the plaintiff brings its claim is silent as to service of process. *See Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (noting in federal question case that "a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located'") (quoting Fed. R. Civ. P. 4(k)(1)(A)); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987) ("Since the [Commodity Exchange Act] does not authorize service of summons on [the defendants], we look to the second sentence of [former] Rule 4(e), which points to the long-arm statute of the State in which the District Court sits . . ."). *Cf. In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (holding that, where Congress has authorized nationwide service of process in a federal statute, "personal jurisdiction may constitutionally be exercised over a defendant in a federal court" in a case arising under that statute even where there are no "minimum contacts between a defendant and the state in which he or she is expected to answer").

   The Lanham Act does not contain a service of process provision. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). Accordingly, the two-step personal jurisdiction analysis is utilized in trademark infringement actions. *E.g., Johnson v. Arden*, 614 F.3d 785, 797-98 (8th Cir. 2010); *Dakota Indus., Inc. v. Dakota*, 946 F.2d at 1387-88 (8th Cir. 1991); *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340-41 (8th Cir. 1983).

   Here, the two steps collapse into the single question of whether the exercise of personal jurisdiction would comport with due process, as it has long been "clear that Minnesota's long arm statutes, Minn.Stat.Ann. ss 303.13 and 543.19, authorize the assertion of jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process." *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1269 (8th Cir. 1978). *See also Dakota Indus.*, 946 F.2d at 1389 n.2 (explaining that the due process standard is the same under Fifth and Fourteenth Amendments).

3

nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Id.* The first three factors are given "significant weight," *id.*, while the last two are "secondary," *Johnson*, 614 F.3d at 794.

"Personal jurisdiction can be specific or general." *Fastpath*, 760 F.3d at 820 (quotation omitted). An examination of the five factors demonstrates that both are lacking here.

I. **General jurisdiction.**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 317 (1945)).

> In this respect, the Supreme Court has
>
> made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. . . . With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. . . . Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. . . . These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotations, punctuation, and citations omitted). To be sure, it has not been held "that a corporation may be subject to general

jurisdiction *only* in a forum where it is incorporated or has its principal place of business," but those are the "paradigm all-purpose forums." *Id.*

Here, Cortec asserts that "this Court may exercise general jurisdiction over Transilwrap due to Transilwrap's extensive business activities within the state of Minnesota." In support of this argument, Cortec points primarily to an affidavit executed by Transilwrap's President and CEO. According to that affidavit, Transilwrap:

- employs a sales representative, based out of his Minnesota home, to cover the territory of Minnesota and the Dakotas;
- has 135 customers in Minnesota;
- derives 6.5-7.7% of its revenue from those Minnesota customers, amounting, in Cortec's calculation, to approximately $15-18 million in annual sales; and
- in 2014, purchased roughly $1.525 million worth of raw materials from seven Minnesota suppliers.

These facts effectively substantiate Cortec's contention that Transilwrap does a substantial amount of business in Minnesota on an ongoing basis. However, under the governing precedent, "the [general jurisdiction] inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic' . . . ." *Id.* at 761. Nor does "the general jurisdiction inquiry . . . focus solely on the magnitude of the defendants' in-state contacts." *Id.* at 762 n.20 (internal quotation and brackets omitted). In fact, the Supreme Court has explicitly held that "the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." *Id.* at 761 (internal quotation and citation omitted).

As noted above, the proper general jurisdiction inquiry "is whether [the defendant] corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear*, 131 S.Ct. at 2851). And "at home" is not synonymous with "doing business." *Id.* at 762 n.20. Because "[a] corporation that operates in many places can scarcely be deemed at home in all of them," determining whether Transilwrap is "at home" in Minnesota "calls for an appraisal of [its] activities in their entirety, nationwide and worldwide." *Id.*

In this light, the following undisputed facts, again found in the affidavit from Transilwrap's President and CEO, are significant:

- Transilwrap "does not have an office, manufacturing facility, rental property or other physical presence of any kind in Minnesota," while it is incorporated and headquartered in Illinois and maintains offices and manufacturing facilities in seven other states and Canada;

- it has 468 employees, only one of whom – the sales representative who works out of his home – is based in Minnesota;

- its 135 Minnesota customers constitute approximately 4% of its customer base of 3,100;

- it derives approximately 92-94% of its revenue from customers located outside of Minnesota; and

- its raw materials purchases from Minnesota suppliers "amount to less than 1% of all [of its] raw material supply purchases."

This record reveals that Transilwrap is subject to suit in its "paradigmatic all-purpose forum" of Illinois, and suggests that it could perhaps be elsewhere as well. However, the record

cannot support a finding that Transilwrap is "essentially at home" in Minnesota.  General jurisdiction over Transilwrap is therefore lacking in this District.

## II.     Specific jurisdiction.

The second possible basis for the exercise of personal jurisdiction over Transilwrap – specific jurisdiction – "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851 (internal quotation and citation omitted).  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation and citation omitted).

The controversy giving rise to this lawsuit is the allegation that Transilwrap is infringing Cortec's trademark by "selling competitive blue marked film products not originating with Cortec on the open market."  However, Transilwrap's President and CEO avers that "Transilwrap itself does not sell any corrosion inhibitor plastic film of any type or of any color," and while it "does own a subsidiary that sells corrosion inhibitor film" – MetPro Ltd., "an Irish holding company that owns several operating companies, including MetPro Group, Inc. a Delaware corporation headquartered in Howell, Michigan" – that "subsidiary has never sold such film in Minnesota."

The parties have not directly addressed the implications of Transilwrap's representation that its subsidiary, and not it, is the entity that sells the allegedly infringing film.  *See Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) ("No all embracing rule has been laid down under which the relationship between two

corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.") (quotation and citation omitted). *See also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 586 (8th Cir. 2011) ("Our cases consistently have insisted that personal jurisdiction can be based on the activities of a nonresident corporation's in-state subsidiary only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.") (internal quotation, punctuation, and citations omitted). This parent-subsidiary issue, however, is not determinative. Even if MetPro's activities are properly attributed to Transilwrap for jurisdictional purposes, Cortec makes no showing regarding the nature, quality, and quantity of MetPro's activities. And – crucially – Cortec does not dispute that neither Transilwrap nor MetPro have ever sold the allegedly infringing film in Minnesota.

The case is therefore on point with *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338 (8th Cir. 1983). There, the defendants were Bassett, "a Virginia corporation engaged in the business of manufacturing and selling furniture, including mattresses and box springs," and Malone, "a Florida corporation [and] a wholly-owned subsidiary of Bassett [that] manufacture[d] mattresses and box springs which [were] sold both under the Malone name and under the Bassett name." *Id.* at 1339. The plaintiff, a Minnesota corporation called Land-O-Nod, alleged that Bassett and Malone had infringed its trademark "Chiropractic" in marketing their mattresses and box springs. *Id.* Land-O-Nod therefore brought an infringement action in this District, and successfully obtained a preliminary injunction. *Id.* The Eighth Circuit, however, determined that personal jurisdiction was lacking, because, while Bassett and Malone

had sold their furniture in Minnesota for years, they had never sold any of the "Chiropractic" mattresses at issue in the state:

> [I]n the instant case it is the absence of any connection between Land-O-Nod's cause of action and the sales activity of Bassett and Malone in Minnesota which forces us to conclude that personal jurisdiction is lacking.  Although Malone mattresses are sold in Minnesota under the Bassett name, none of the allegedly infringing "Chiropractic" mattresses have been sold in Minnesota. . . .
>
> [W]e are aware of no actions by either Bassett or Malone indicating that they are purposefully availing themselves of the privilege of conducting business in the allegedly infringing mattresses in Minnesota. . . .
>
> In sum, the requisite relationship among the defendants, the forum, and the litigation is lacking in this case; it would be fundamentally unfair to permit the prosecution of this lawsuit in Minnesota.  As we have observed, there are at least 13 different states in which Bassett and Malone are selling the allegedly infringing mattresses; thus there exist numerous alternative forums in which this action might be maintained.

*Id.* at 1341, 1343.  The record here similarly reveals no connection between Cortec's cause of action for trademark infringement and any sales activity by either Transilwrap or MetPro in Minnesota.

Cortec contends that specific jurisdiction nonetheless exists because the allegedly "infringing blue film is marketed to Minnesota through MetPro Group's website."  But, even again assuming that MetPro's activities could properly be imputed to Transilwrap, this argument fails.  As its lone support, Cortec submitted "a brochure distributed by MetPro Group that is available at the MetPro Group website" and which promotes MetPro's "VCI corrosion protection films."

However, Cortec has made no showing that the brochure has ever been distributed in Minnesota; that MetPro "uniquely or expressly" markets its film products to Minnesota customers, whether with the brochure, online, or otherwise; or that anyone in Minnesota has ever "accessed the website in doing business with" MetPro.  *See Johnson*, 614 F.3d at 796-98

(contrasting, in a specific jurisdiction analysis, the "mere posting of information on a website" with "interactive" websites that allow for "active contract formation and repeated transmission of computer files") (citing *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir. 2003) and *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997)).

Viewing the website and the brochure in the light most favorable to Cortec and granting it all reasonable inferences therefrom, Cortec has shown, at most, that MetPro maintains a passive website through which materials promoting the allegedly infringing blue film may be accessed in Minnesota. But using a website merely to make information generally available to others, including in the forum state, is "insufficient to confer personal jurisdiction." *Id.* at 796. *See also Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011) (finding specific jurisdiction lacking because the defendants' contacts with the forum state "did not cause or otherwise precipitate the alleged infringement").

As a final argument, Cortec asserts that Minnesota has an interest in providing a forum for this litigation. It could well be true that Cortec, as a Minnesota-based corporation, feels the brunt of the economic impact caused by the infringement of its trademarks in Minnesota. And Minnesota may have an interest in providing a forum for Cortec to seek redress for that type of harm. *Id.* at 746 ("Infringing upon a trademark, as a tort, may be grounds for personal jurisdiction under [a state's] long-arm statute."). However, consistent with due process, neither the presence of in-forum effects, nor the forum state's interest arising therefrom, can confer personal jurisdiction over a non-resident defendant in the absence of the requisite minimum contacts. *E.g., Johnson*, 614 F.3d at 796-97 ("We . . . construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.").

As Cortec has failed to make the requisite prima facie showing that the exercise of personal jurisdiction over Transilwrap would comport with due process, Transilwrap's motion is granted and this action is dismissed without prejudice.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 10] is GRANTED.
2. This action is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 13, 2015                    s/Joan N. Ericksen
                                           JOAN N. ERICKSEN
                                           United States District Judge